Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| EDGAR ABNER REYES COLÓN<br><br>Recurrido<br><br>v.<br><br>SHEILA LI BENABE GONZÁLEZ<br><br>Peticionaria | KLCE202500413 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2021RF00002 (708)<br><br>Sobre: Divorcio (Ruptura Irreparable) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Rodríguez Casillas y el Juez Candelaria Rosa.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de mayo de 2025.

En un caso sobre pensión alimentaria, el Tribunal de Primera Instancia ("TPI") declinó declarar al padre incurso en desacato por la falta de pago de cierta sanción económica impuesta por este Tribunal a favor de la madre y, en vez, se limitó a ordenar el pago de la misma en determinado plazo. Según se explica a continuación, concluimos que erró el TPI al no encontrar incurso en desacato al padre, pues del récord surge claramente que el incumplimiento de este con las sanciones impuestas constituye un voluntario y abierto desafío a la autoridad del tribunal.

I.

Las partes, el Sr. Edgar Abner Reyes Colón (el "Padre") y la Sra. Sheila Li Benabe González (la "Madre"), procrearon una menor

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre *Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones*. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLCE202200358, KLCE202300137, KLCE202300243, KLAN202300608, KLCE202300890, KLCE202400303, KLCE202400757, KLRX202400007 y KLCE202401362); véase, además, Orden Administrativa OATA-2023-032 de 27 de febrero de 2023.

de edad (la "Hija").  En un trámite anterior ante este Tribunal (KLCE202400303), este Tribunal dispuso lo siguiente:

> Por tanto, en o antes de los cinco días laborables siguientes a la expedición del mandato, el demandante deberá satisfacer a la demandada la suma de $1,733.00 (servicios de la cuidadora por el mes de junio de 2023), más $3,000.00 por concepto de honorarios de abogado. En la medida que el demandante no pague la totalidad de dichas cuantías dentro del término provisto, este tendrá que satisfacer una sanción adicional de $200.00 por cada día que transcurra entre la fecha límite aquí dispuesta y la fecha en que finalmente cumpla con lo aquí ordenado.

El mandato de la Sentencia en el referido recurso (la "Sentencia") se emitió el 11 de julio de 2024.

En octubre, la Madre presentó una moción de desacato (la "Moción").  Expuso que el Padre no había pagado las sumas ordenadas por este Tribunal en la Sentencia dentro del término allí dispuesto, sino que solo había realizado un primer pago parcial el 4 de octubre.  Requirió al TPI que ordenase al Padre cumplir con el remanente de lo adeudado bajo los términos de la Sentencia, so pena de que se le arrestase por desacato.  Además, arguyó que, al no haberse satisfecho la totalidad de los pagos contemplados, la sanción continuaba aumentando diariamente.

El Padre se opuso a la Moción.  Indicó que la cuantía pagada en octubre correspondía a $4,733.00 por concepto de lo ordenado en la Sentencia, más $1,500.00 relacionados con otro dictamen de este Tribunal (KLCE202400757).  Arguyó que, como la sanción contemplada en la Sentencia no es "parte de los alimentos …, no le es aplicable el desacato civil que aplica al incumplimiento de pago de alimentos".  Sostuvo que "dichas penalidades son materia de una acción de cobro de dinero ordinaria".

El Padre alegó que la Madre tiene una "deuda de arrendamiento" con él y que, por tanto, las sanciones serían "compensables" con la referida deuda.  Señaló que, en otra acción

civil (SJ2024CV09336, o el "Otro Caso") entre las partes, sobre cobro de dinero, "se han consignado los dineros de las penalidades".

Tomamos conocimiento judicial de que, en el Otro Caso, el Padre le reclama a la Madre el pago de $10,000.00 mensuales por el alquiler del inmueble en que esta vive con la Hija, efectivo desde el 1 de febrero de 2024. En dicho caso, el Padre consignó $15,400.00, correspondientes a la sanción de $200.00 impuesta en la Sentencia, por cada uno de los 77 días trascurridos desde el 19 de julio hasta el 3 de octubre de 2024 (incluidos ambos), cuantía que admitió le debe a la Madre.

La Madre replicó. Afirmó que no había sido emplazada en el Otro Caso y planteó que, en todo caso, no aplicaba la figura de la compensación, pues ella no tiene una deuda "líquida, vencida y exigible" con el Padre.

El 2 de diciembre, el TPI notificó una Resolución (la "Resolución"). El TPI razonó que, como las sanciones impuestas en la Sentencia no formaban parte de los alimentos, no procedía el "desacato civil". Además, determinó que las sanciones se dejaron de acumular el 4 de octubre de 2024. Estimó que la cuantía debida por concepto de sanciones era de $15,400.00 y le ordenó al Padre pagar dicha cuantía en el término de 45 días.

El 16 de diciembre, a las 8:09pm, la Madre presentó un recurso ante este Tribunal mediante el cual solicitó la revisión de la Resolución (el "Primer Recurso"). Sostuvo que el TPI erró al considerar que no tenía disponible el desacato civil como mecanismo para obligar al Padre a pagar las sanciones impuestas en la Sentencia. Además, planteó que, como las sanciones no se pagaron el 4 de octubre, las mismas continuaban acumulándose. Finalmente, arguyó que el TPI debió condenar al Padre al pago de honorarios de abogado por el trámite dirigido a cobrar las sanciones.

Más tarde ese día, a las 11:20pm, el Padre solicitó al TPI la reconsideración de la Resolución (la "Reconsideración"). Sostuvo que el TPI había errado al ordenarle que pagara las sanciones, pues ya este las había consignado en el Otro Caso y dicha cuantía estaría sujeta a compensación con la deuda de alquiler que allí se reclama.

El 3 de enero, **el Padre nos solicitó que desestimáramos el Primer Recurso**. Arguyó que el mismo era prematuro, pues el TPI tenía pendiente de adjudicar la Reconsideración, lo cual había interrumpido el término para acudir ante este Tribunal con el fin de solicitar la revisión de la Resolución.

Mediante una Resolución de 15 de enero de 2025, denegamos la expedición del auto solicitado mediante el Primer Recurso. Aunque no adjudicamos el asunto jurisdiccional, sí determinamos que, en cualquier caso, "lo más prudente es posponer cualquier intervención nuestra hasta que el TPI haya adjudicado la Reconsideración". Expresamente concluimos que, a partir de que se resolviese la Reconsideración, "**cualquiera de las partes podrá acudir ante este Tribunal con el fin de solicitar que revisemos la Resolución, lo que disponga el TPI en reconsideración, o ambas, según sea el caso**" (énfasis suplido).

Mediante una Resolución notificada el 31 de marzo, el TPI denegó la Reconsideración.

El 15 de abril, la Madre presentó el recurso de referencia, en el cual reproduce lo planteado en el Primer Recurso.

El 24 de abril, le ordenamos al Padre mostrar causa, en o antes del 6 de mayo, por la cual no debíamos expedir el auto solicitado, "encontrarlo incurso en desacato civil por incumplir de forma voluntaria con su obligación de pagar las sanciones impuestas por este Tribunal ... y, de conformidad, ordenar su encarcelamiento hasta que pague las referidas sanciones".

Oportunamente, el Padre compareció. Planteó que el recurso que nos ocupa debía ser desestimado porque era tardío. Expuso que, contrario a lo que él mismo había planteado al solicitar la desestimación (por prematuro) del Primer Recurso, en realidad la Reconsideración no había interrumpido el término para que la Madre solicitase la revisión de la Resolución. Arguyó que ello obedecía a que la Reconsideración se dirigió a una parte de la Resolución (orden de pago de sanciones) distinta a la parte de la Resolución cuya revisión solicita la Madre (denegatoria de moción de desacato). En cuanto a los méritos del asunto planteado por la Madre, el Padre arguyó que le había "ofrec[ido] los $15,400.00 dólares [a la Madre] ... y esta los rechazó y solo estaba dispuesta a aceptarlos como pago parcial." Resolvemos.

## II.

Es doctrina establecida en nuestro ordenamiento jurídico que el poder de castigar por desacato es un atributo inherente que posee el Poder Judicial para velar por el funcionamiento ordenado de los procesos que debe imperar en los tribunales. *E.L.A v. Asoc. de Auditores*, 147 DPR 669 (1999). Todo Tribunal tiene la facultad inherente, en cualquier caso, para hacer cumplir sus órdenes y para imponer desacatos civiles, en auxilio de su jurisdicción, 4 LPRA sec. 24o; *Srio. DACO v. Comunidad San José, Inc.*, 130 DPR 782, 804 (1992).

El desacato "civil" pretende únicamente inducir a alguien a cumplir con una obligación, y su imposición por el incumplimiento de una orden judicial puede conllevar la reclusión indefinida del infractor, hasta que se cumpla con la obligación pertinente, por lo cual se dice que, en estos casos, la persona "tiene la llave de las puertas de la prisión". *Pérez v. Espinosa*, 75 DPR 777, 781 (1954).

En el desacato criminal, a diferencia del civil, el castigo va dirigido a vindicar la dignidad y autoridad de los tribunales. *Guzmán*

*Vega v. Piñero Piñero*, 91 DPR 704 (1965). La sentencia de desacato criminal es por un término fijo de encarcelación o por una multa o penalidad fija, a ser cumplida o pagada independientemente del cumplimiento posterior de la orden u obligación original. *Guzmán Vega, supra*; *Pérez v. Espinosa, supra.*

III.

Como cuestión de umbral, y contrario a lo planteado por el Padre, concluimos que tenemos jurisdicción para adjudicar el recurso de referencia. La Reconsideración interrumpió el término que tenían todas las partes para solicitar ante este Tribunal la revisión de la Resolución. Hasta el momento, no existe una norma, estatutaria o jurisprudencial, que establezca términos distintos a cada parte para solicitar la revisión de un mismo dictamen del TPI. Al contrario, la norma siempre ha sido que el término debe ser uniforme para todas las partes.

En este caso, tal y como arguyó el Padre en ocasión de solicitar la desestimación del Recurso Anterior, la Reconsideración tuvo el efecto de paralizar el término para que la Madre solicitara la revisión de la Resolución. Como bien expusimos al conceder la solicitud del Padre, y así desestimar el Recurso Anterior, ello implicó que cualquiera de las partes podría, una vez resuelta la Reconsideración, acudir ante este Tribunal para solicitar la revisión de cualquier parte de la Resolución. Eso es exactamente lo que ocurrió aquí.

En los méritos, concluimos que erró el TPI al concluir que no tenía la potestad de encontrar incurso en desacato civil al Padre por su incumplimiento con lo ordenado en la Sentencia. Según arriba expuesto, la norma es que todo Tribunal tiene la facultad inherente, en cualquier caso, para hacer cumplir sus órdenes y para imponer desacatos civiles, en auxilio de su jurisdicción.

En este caso, el récord claramente demuestra que el incumplimiento del Padre ha sido voluntario; es decir, el

incumplimiento no obedece a razones fuera de su control. El incumplimiento obedece, en vez, a su errada postura a los efectos de que puede sujetar el pago de la sanción al resultado del Otro Caso, en el cual le reclama a la Madre por un asunto no relacionado con las sanciones. De hecho, el Padre consignó el monto de la sanción ($15,400.00) en el Otro Caso (consignación que ha sido rechazada ya dos veces por el tribunal) e, incluso, afirma que le ofreció a la Madre pagar las sanciones, pero que finalmente determinó no entregarle el pago de lo que admite le debe, ello porque la Madre asumió la postura de que las sanciones realmente eran más altas y que, por tanto, solo aceptaría el dinero ofrecido como un pago "parcial".

De conformidad, ante el abierto, voluntario y obstinado desafío del Padre a cumplir con una orden judicial, a pesar de su admitida y demostrada capacidad para cumplir, el TPI claramente debía y podía encontrarlo incurso en desacato y ordenar su encarcelamiento hasta que cumpliese. Se trata de un caso en el cual, una vez recluido, el Padre "t[endrá] la llave de las puertas de la prisión". *Pérez v. Espinosa*, 75 DPR 777, 781 (1954)

En cuanto a la controversia sobre el monto de la sanción, concluimos que tiene razón el Padre. Según dispusimos en la Sentencia, la sanción diaria se acumularía hasta tanto se pagase la cuantía subyacente que allí ordenamos debía pagarse ($4,733.00). Ello ocurrió el 4 de octubre de 2024. Por tanto, la sanción dejó de acumularse ese día. La cuantía calculada por el TPI y el Padre ($15,400.00) es correcta, pues refleja la sanción diaria que se acumuló durante el periodo en que este se rehusó a pagar la cuantía subyacente (del 19 de julio al 3 de octubre, inclusive; es decir 77 días). Contrario a lo planteado por la Madre, en la Sentencia no se impuso una sanción adicional en caso de que no se pagase la sanción impuesta, ni se dispuso que la sanción impuesta

continuaría acumulándose más allá del día en que se pagase la obligación subyacente objeto de la Sentencia.

Finalmente, no procede, en estas circunstancias, obligar al Padre a satisfacer honorarios de abogado por las gestiones de la Madre dirigidas a cobrar las sanciones. En primer lugar, estas sanciones propiamente no forman parte de los alimentos debidos por el Padre. En segundo lugar, tampoco podemos concluir que el Padre haya incurrido en temeridad, pues este ofreció, por escrito, pagar la cuantía realmente debida y, si la Madre no hubiese insistido (erróneamente) en que las sanciones realmente eran mayores, el asunto presumiblemente ya se hubiese solucionado.

IV.

Por los fundamentos antes expuestos, se expide el auto solicitado y se modifica el dictamen recurrido a los fines de encontrar incurso en desacato civil al Sr. Edgar Reyes Colón por su incumplimiento voluntario con su obligación de pagar la sanción impuesta por este Tribunal ($15,400.00) a favor de la Sa. Sheila Benabé González. Se devuelve el caso al Tribunal de Primera Instancia para que, en o antes de tres días laborales luego de notificada este Sentencia, emita, y gestione el diligenciamiento de, la correspondiente orden de arresto contra el demandante, quien deberá permanecer recluido hasta tanto se acredite el cumplimiento con la antedicha obligación.

**Al amparo de la Regla 35 (A)(1) de nuestro Reglamento,[2] el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.**

---

[2] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del

Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones